**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**TAMMY MARIE ALBRIGHT,**

        **Plaintiff,**

**-vs-**                                           **Case No. 6:09-cv-1185-Orl-31DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on review of the Commissioner's decision to deny Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income. For the reasons set forth herein, it is **respectfully recommended** that the decision of the Commissioner be **AFFIRMED.**

*PROCEDURAL HISTORY*

Plaintiff protectively filed applications for a period of disability and disability insurance benefits, and Supplemental Security Income, alleging an onset of disability as of April 27, 2004 (R. 23, 49-52, 273-74). Plaintiff's claims were denied initially and upon reconsideration, and she requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 41, 45, 278-89). The ALJ determined that Plaintiff was not disabled, in a decision dated October 18, 2006 (R. 20-28). The Appeals Council denied Plaintiff's request for review on April 17, 2007, making the decision of the ALJ the "final decision" of the Commissioner (R. 11-13). Plaintiff filed a Request for an Extension of Time to file a civil action (R. 6), which was granted by the Appeals Council on June

15, 2009 (R. 4).¹ The instant Complaint followed (Doc. No. 1), and the matter has been referred to the undersigned. The parties have filed their briefs and the matter is now ripe for judicial review pursuant to the Social Security Act, 42 U.S.C. § 405(g).

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims to be disabled due to degenerative disc disease of the lumbar spine, diabetes, obesity, and depression (Doc. No. 13, pg. 2).

*Summary of Evidence before the ALJ*

Plaintiff was twenty-five years old at the time of the ALJ's decision, with a GED² credential and past relevant work experience as a customer service representative, clerical worker, retail sales clerk, housekeeper, and hostess (R.28; 75-82, 281).

By way of summary of the medical record: the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, obesity, and depression (R. 25) and the record supports this uncontested finding. In addition to the medical records of Plaintiff's treating providers, the record also includes opinions from examining and non-examining state agency practitioners. Non-medical evidence includes numerous reports and forms completed by Plaintiff, and Plaintiff's testimony at the hearing. No Vocational Expert testified and Plaintiff was not represented by counsel or otherwise at the administrative hearing.

After evaluating the evidence, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, obesity, and depression (R. 25), but determined that Plaintiff had no impairment or combination of impairments that met or medically equaled any Listing

---

¹According to the papers, Plaintiff thought that she had obtained counsel to prosecute her appeal, but no appeal was filed. The record indicates that, in December 2006, Plaintiff filed another application for benefits, which was approved in 2008 (R. 6-10).

²General Educational Development.

(R. 25). The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary to light work, with occasional postural movements, and the mental capacity to perform simple, routine, repetitive tasks (R. 26, Finding 5). The ALJ then determined that Plaintiff had the capacity to perform her past relevant work as a customer service representative, clerical worker, retail sales clerk, housekeeper, and hostess, and was therefore not disabled (R. 28).

## *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## *ISSUES AND ANALYSIS*

Plaintiff raises two general issues on her appeal, asserting: 1) the ALJ failed to properly evaluate her allegations of pain, and 2) the ALJ failed to properly re-contact the Plaintiff's treating physician. Upon review, the Court finds no error.

*The Five Step Evaluation*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). The plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Here, the ALJ determined the matter at step four, finding that Plaintiff had not shown a disability that would prevent her returning to her past relevant work.

*Pain Standard*

Plaintiff contends that the ALJ erred in evaluating her complaints of pain. It is undisputed that the ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*See Foote v. Chater*, 67 F.3d 1553, 1559-60 (11th Cir. 1995), *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). Where an ALJ decides not to credit a claimant's testimony about pain or other limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Applied here, Plaintiff contends that the ALJ did not consider all of the medical evidence when determining the extent of her pain. Specifically, Plaintiff contends that the ALJ did not address the opinions of consultative examiner Dr. Haté; the opinion of Kenaday Medical Center that the Plaintiff had a herniated disc L4-5 and may need neurosurgery in the future (R. 20-28, 171); Dr. Creamer's decision to excuse the Plaintiff from work (R. 20-28, 138); and the decision to not proceed with any additional intervention due to the Plaintiff not receiving any substantial relief from the previous epidural steroid injection (R. 20-28, 137). Plaintiff further alleges that the ALJ improperly

-5-

discounted the Work Capacity Assessment that concluded that Plaintiff could perform no work (R. 27-28). The Court treats each, in turn.

*Dr. Haté*

Consultative examiner Dr. Haté examined Plaintiff on May 3, 2005 (R. 233-238). He noted no obvious physical deformities, cyanosis, or clubbing; her arms and legs were normally developed with no deformities; her gait was normal; and she could heel and toe walk fully and squat to 50 % (R. 233-34). The measurement of Plaintiff's thighs and calves was normal, with no atrophy; she did not require an assistive device; straight leg raise tests were negative bilaterally; and her spine was normally maintained (R. 234). Plaintiff's sensation was generally preserved; motor functions, in terms of muscle strength and grip strength were all normal; and coordination for gross and fine movements was normal (R. 234). Plaintiff's deep tendon reflexes were lost throughout, although Dr. Haté opined that this may be due to the fact that she was a young diabetic, controlled on diet alone (R. 234-35). Her range of motion was normal elsewhere, but reduced in her thoracolumbar spine, and it was noted that she had no localizing neurological signs. It was noted that Plaintiff usually does not have medications for her back, but went to the hospital emergency room to get some just the day before the examination (R. 235). Dr. Haté opined that "[a]ny limitations would be secondary to her pain and physical deconditioning" (R. 235).

Plaintiff is correct that the ALJ did not address Dr. Haté's consultative examination in the administrative decision. This does not warrant an automatic reversal, however. Plaintiff acknowledges that there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, as long as the ALJ's decision enables a reviewing court to conclude that the ALJ considered the claimant's entire medical condition. *Dyer v. Barnhart*, 395 F.3d 1206,1211 (11th Cir. 2005). If the examination included opinions that directly contradict the ALJ's findings, reversal

would be warranted, but reversal is not necessary where the error is harmless. *See Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir. 1983) (ALJ error harmless where correcting the error would not change the ALJ's decision). Applied here, the Court finds that the evaluation of Dr. Haté is consistent with the other medical evidence of record and is not inconsistent with the ALJ's findings, and, as such, does not warrant remand.

The ALJ set forth in his decision the medical findings from Plaintiff's treatment providers, and other consultants. From March 18, 2003 through March 25, 2004, Plaintiff was treated by Mohammad A. Latif, M.D. (R.120-128). The notes reveal numerous complaints of back pain, and medications were prescribed. Dr. Latif did not note any functional or occupational limitations or restrictions.

On April 1, 2004, Plaintiff was treated by Stephen Goll, M.D. at the Orlando Orthopaedic Center (R 131-135). Dr. Goll diagnosed the Plaintiff with Disc Degeneration, L3-4, L4-5 and Central Herniated Nucleus Pulposus, L4-5 (R. 131), prescribed medications and ordered physical therapy for four to six weeks (R. 131). Dr. Goll recommended a series of epidural steroids, and noted that Plaintiff "may continue working" (R. 131).

From April 30, 2004 through May 14, 2004, Plaintiff was treated by Dr. Michael J. Creamer (R. 136-141). On April 30, 2004, Plaintiff underwent a lumbar epidural steroid injection (R. 140). On May 5, 2004, Plaintiff reported continued pain despite the recent epidural steroid injection (R. 139). Plaintiff was receptive to undergoing a second injection (R. 139), and Dr. Creamer excused the Plaintiff from work from April 30, 2004 through May 7, 2004 (R. 138-9). On May 12, 2008, Plaintiff called Dr. Creamer and reported no relief from the previous epidural steroid injection (R. 137). Dr. Creamer thus referred her back to Dr. Goll (R. 137). Dr. Creamer imposed no permanent restrictions or limitations on Plaintiff.

On July 21, 2004, Plaintiff presented to the emergency room with complaints of back pain (R.. 150-170). On examination, she had a normal gait, motor was intact, she was neurologically intact and, while she had tenderness in the right sacroiliac notch area, "her lower lumbar actually is not that tender" (R. 150). She was given pain medication and discharged to her orthopedist. It was noted that "there is no indication of neurologic urgency at this point." (R. 151).

From July 23, 2004 through August 27, 2004, Plaintiff was treated by Kenaday Medical Clinic (R. 171-173). Plaintiff was diagnosed with herniated disc L4-5, insomnia, insulin dependent diabetes mellitus, and depression, and treated conservatively (R. 172). No work restrictions were placed on Plaintiff.

From May 10, 2004 through August 23, 2004, Plaintiff was treated by Scott Bray, AP (R. 174-178). Her acupuncturist opined that if a level of relief could be found, she could hold work in which minimal or no lifting is involved (R. 180).

On December 15, 2004, Dr. Shanti Singh performed a consultative exam (R. 27, 185-88). Dr. Singh reviewed a March 25, 2004, lumbar MRI showing degenerative disc disease at L3-4 and a disc protrusion at L4-5 impinging on the right S1 nerve root (R. 26, 185). Dr. Singh noted Plaintiff ambulated well with only a slight limp on the right and without the use of an assistive device, and she had no trouble ascending the exam table (R. 186). It was noted that Plaintiff's extremities showed no evidence of cyanosis, clubbing, or edema, and she was grossly neurologically intact with no neurological deficits (R. 187). Plaintiff had a reduced range of motion at her waist, trouble walking on her heels and toes, and, as noted by the ALJ, a straight leg raise elicited low back tenderness radiating down her thigh (R. 28, 32, 187). Plaintiff had good motor strength in her upper and lower extremities, her grip strength and fine dexterity were preserved, and there was no evidence of atrophy (R. 187). Dr. Singh assessed Plaintiff with degenerative disease of the lumbar spine, herniated lumbar

disk with impingement on the S1 nerve root, lumbar radiculopathy, diabetes and depression (R. 187), but found that "[s]he should have no trouble with at least a sedentary job." (R. 188).

Plaintiff was examined by consultative psychologist Dr. Ysern on December 14, 2004, the day before Dr. Singh's exam (R. 181-83). Dr. Ysern found no psychological impediments to work, and observed no abnormalities of psychomotor activity or gait coordination, noting that Plaintiff did not require an assistive device for walking (R. 27, 182).

The ALJ discussed Plaintiff's testimony of pain and limitations, the medical evidence, and the reports from non-examining state agency consultants, who opined that Plaintiff was capable of work. As set forth above, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, obesity, and depression (R. 25), but that the impairments were not of listing severity, and found that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary to light work, with occasional postural movements, and the mental capacity to perform simple, routine, repetitive tasks (R. 26, Finding 5).

Dr. Haté did not find limitations to exist greater than those already noted by the ALJ or inconsistent with the other evidence of record. Although Plaintiff cites to Dr. Haté's opinion that "any limitations may be due to pain and physical deconditioning," the statement does not, itself, purport to establish any limitations, and Plaintiff does not explain how this opinion is inconsistent with the RFC found by the ALJ. As noted by the ALJ, no treating or examining consultant found Plaintiff's condition to be disabling, and, indeed, most of Plaintiff's providers and examiners affirmatively found that she could perform some level of work. No reversible error is shown.

*Kenaday Medical Center*

The Court is also unpersuaded by Plaintiff's contention that the ALJ did not consider the records of the Kenaday Medical Center, specifically the notes that Plaintiff had a Herniated Disc L4-5

and may need neurosurgery in the future (R. 171). In fact, the ALJ noted the herniated disc (R. 26), and there is no evidence that Plaintiff underwent neurosurgery. An opinion by a non-specialist that a patient *may* need surgery at some unspecified time in the future is not the equivalent of an opinion that the patient is *presently* disabled. No error is shown.

*Dr. Creamer*

Plaintiff next contends that the ALJ erred in failing to note that Dr. Creamer excused Plaintiff from work and did not proceed with any additional intervention, due to Plaintiff not receiving relief from previous injection. Dr. Creamer excused Plaintiff from work the week of April 30, 2004, through May 7, 2004, in order for her to undergo the second epidural injection (R. 138-39). Plaintiff decided not to undergo the second injection, however, and she did not follow-up further with Dr. Creamer (R. 137). In this context, a one week "off duty" status is not persuasive of disability. Moreover, contrary to Plaintiff's contention, the ALJ specifically noted that Plaintiff did not report pain relief from the injection (R. 26, citing Dr. Creamer's records at Exhibit F). The ALJ did not fail to give consideration to Dr. Creamer's records.

*Activities of Daily Living*

Plaintiff objects to the ALJ's citation to her activities of daily living ("ADL") to rule out the presence of disabling pain. Plaintiff testified that she can only stand for five minutes, walk for less than five minutes, and sit for ten minutes (R. 286-287). The ALJ found these assertions to be not entirely credible based, in part, on her reports that she can drive and shop, although slower than she used to, can do household chores, with breaks, and that she can perform her basic care needs without assistance (R. 26-27). Plaintiff contends that she cannot, in fact, perform these tasks (citing to her testimony and forms she completed) and that the ALJ cannot rely on these ADL's to discredit her allegations.

-10-

The Court finds that this contention misses the mark. At issue is not whether other evidence may support a contrary conclusion, but whether substantial evidence exists to support the conclusion the Commissioner has made. Here, that standard is met. *See, e.g.,* the activities of daily living reported at R. 182, 70, 106.[3] As for the recitation of daily activities, Plaintiff is correct that the Eleventh Circuit does not believe that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability. . . ." *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), but the ALJ here was not making a disability determination based on the daily activities of Plaintiff. Rather, the ALJ cited to these activities in evaluating the credibility of Plaintiff's allegations of severe limitations. There is no support for a contention that evidence of daily exertional activities is irrelevant in this context. *See Moore v. Barnhart,* 405 F. 3d 1208, 1212 (11th Cir. 2005) (noting ALJ reliance on inconsistencies between claimant's descriptions of her diverse daily activities and her claims of infirmity as basis for adverse credibility determination).

*Work Assessment*

Plaintiff contends that the ALJ erred in discounting a June 13, 2006, Work Capacity Assessment completed by a physical therapist at Florida Hospital Rehabilitation and Sports Medicine (R. 247-52). Physical therapist Cheryl White opined that Plaintiff was unable to perform an 8-hour workday at any physical level due to deficits in lifting, carrying, pushing/pulling, stooping, kneeling, squatting, and standing/walking (R. 247). Plaintiff was discharged to her physician for follow-up to determine her return-to-work disability status and any further treatment (R. 247). In his decision, the ALJ discounted the assessment, noting that it does not represent a physician's opinion, and that the findings included within it "have not been noted by any medical source." (R. 28). The ALJ further

---

[3]Note, that the ALJ found that the majority of the record shows that the claimant is able to sustain sedentary to light exertion (R. 27). The medical evidence cited above, including the opinions of the examining physicians that Plaintiff can perform some level of work, is also inconsistent with her allegations of disabling limitations. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

noted that the claimant has not been found to have any limitations such as those proposed by the physical therapist and the conclusions were inconsistent with observations made by examining medical sources. *Id.* Plaintiff contends that the ALJ erred in failing to credit this opinion and in failing to re-contact her doctor, with respect to this opinion.

It is not disputed that a physical therapist is not an acceptable medical source, as defined by the regulations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Plaintiff argues instead that the assessment was due deference as it was "ordered by the Plaintiff's physician." (Brief at 12). There is no evidence, however, that Plaintiff's physician reviewed this report and agreed with or adopted its findings. Indeed, Plaintiff testified that she did not return to the physician after this report was rendered (R. 281-82), and there is no treatment note of record from Dr. Latif ordering the assessment or noting its receipt.[4] At best, then, the assessment is the opinion of an "other source" (20 C.F.R. §§ 404.1513(d); 416.913(d)) which has not been adopted or approved by any acceptable medical source and is contradicted (as shown above) by other objective medical evidence of record and other opinions from medical sources that Plaintiff can work. In this context, the ALJ did not err in evaluating the assessment, but giving it no deference. *See Cotton v. Commissioner of Social Sec.*, 2010 WL 746445, 7 (M.D. Fla. 2010) ("While "other sources" can provide insight into the severity of a claimant's impairments and how the impairments affect his ability to function, the Commissioner is not required to accept a conclusion from a non-acceptable medical source and may accord such weight as he deems appropriate based upon the medical evidence of record"citing SSR 06-3p.)[5]

---

[4]While Plaintiff was unrepresented at her hearing, she supplied the assessment to the ALJ but did not supply any 'referral' or other 2006 treatment note from Dr. Latif, although she mentioned that she had "two additional recent medical records to send you." (R. 118-119). Plaintiff retained a non-attorney representative who prosecuted her Request for Review before the Appeals Council (R. 14-19). The representative did not obtain or introduce any additional records from Dr. Latif either.

[5]Social Security Ruling 06-03p ("SSR 06-03p") sets forth factors to be considered in evaluating evidence from both "acceptable medical sources," and "other" medical sources:

*Recontacting Physician*

Plaintiff next contends that the ALJ should have recontacted the physician who ordered the assessment, as "the ALJ had a duty to recontact the treating physician if additional information was needed." (Doc. No. 13 at 14, citing 20 CFR § 416.912(f).) The Eleventh Circuit has summarized the Commissioner's obligations with respect to recontacting treating providers:

> Medical sources should be recontacted when the evidence received from that source is inadequate to determine whether the claimant is disabled. 20 C.F.R. § 404.1512(e); § 416.912(e). Social Security Ruling 96-5p requires the ALJ to make "every reasonable effort" to recontact the medical source for clarification of the reasons for the opinion if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record. Soc. Sec. Rul. 96-5p. In evaluating whether it is necessary to remand, we are guided by "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir.1995) (quotations and citations omitted). The likelihood of unfair prejudice may arise if there is an evidentiary gap that "the claimant contends supports [his] allegations of disability." Id. at 936 n. 9.

*Couch v. Astrue* 267 Fed.Appx. 853, 855 (11th Cir. 2008) (finding the duty to recontact did not arise because the ALJ had all the records from the medical source and there was no need for additional information).

Applied here, Plaintiff contends that Dr. Latif should have been re-contacted because the assessment was highly favorable to her and "[d]ue to the detail and comprehensiveness of the report along with the medical evidence, the ALJ had a duty to recontact Dr. Latif to clarify his instruction for the Plaintiff to receive this assessment. If Dr. Latif's instruction to receive an assessment is in the

---

> How long the source has known and how frequently the sources has see the individual; How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion; How well the source explains the opinion; Whether the source has a specialty or area of expertise related to the individual's impairment(s); and; any other factors that tend to support or refute the opinion.

The record here indicates that this was a one time examination that is inconsistent with the conclusions of treating medical sources.

normal course of his treatment regiment, the ALJ had a duty to determine how the evidence would be used or evaluated upon receipt." (Doc. No. 13 at p. 15).

As set forth above, it is undisputed that Plaintiff did not return to Dr. Latif after the assessment was made. Thus, there is no evidence that Dr. Latif received the assessment, agreed with the conclusions, or disagreed. It appears that, rather than recontacting the source to "clarify" the records, Plaintiff is actually contending that Dr. Latif should have been recontacted to *develop* the record in the first instance. The Court finds this to be a completely different matter than recontacting a source to clarify an existing opinion.

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997). The true issue here, as the Court sees it, is whether or not the ALJ had a duty to contact Dr. Latif, give him a copy of the medical assessment, and inquire as to his opinion about it. Even though Plaintiff was unrepresented at the hearing,[6] the Court finds the ALJ's duty cannot extend this far. It is the claimant's responsibility to introduce evidence in support of her application for benefits. *Ellison v. Barnhart,* 355 F. 3d 1272, 1276 (11th Cir. 2003) (noting that the ALJ is "no way bound" to develop the medical record for the period of time after the application was filed.)[7] Here, the record includes presumably all of the medical records of Dr. Latif. As there is no indication that other records from Dr. Latif existed that were not provided (as Plaintiff admits she did not see him after the assessment), or that his existing records presented a conflict or ambiguity, and

---

[6]Plaintiff explicitly waived her right to counsel at the hearing (R. 280).

[7]We stress that this is not a case where the ALJ failed to make efforts to obtain *existing* medical records from a known provider. Rather, the Court finds that an ALJ is not required to *create* the medical records in the first instance, with respect to existing providers (as opposed to state agency examiners).

-14-

there is ample other evidence in the record sufficient to make a decision, the Court finds no error in failing to re-contact Dr. Latif, in these circumstances.

As set forth above, the ALJ properly applied the pain standard, and his determination is supported by substantial evidence. Specifically, the ALJ found that Plaintiff's impairments could reasonably be expected to produce the symptoms, but not to the disabling extent Plaintiff alleges (R. 27). In reaching this conclusion, the ALJ considered Plaintiff's subjective complaints of disabling pain, and adequately explained his reasons for discrediting those complaints. No error is shown.[8]

A final word is in order. The Court is convinced from the record that Plaintiff has a very real impairment that no doubt causes her significant distress. At issue, however, is not whether the Court would rule differently if given the opportunity to weigh the evidence in the first instance, but whether the decision of the Commissioner was made in accordance with proper legal standards and is supported by substantial evidence. For the reasons set forth above, the Court finds that the decision meets this standard. As such, it must be affirmed.

## RECOMMENDATION

The decision of the Commissioner is supported by substantial evidence and was made in accordance with proper legal standards and it is **respectfully recommended** that it be **AFFIRMED.** Should this Recommendation be adopted, the Court should direct the Clerk to enter judgment accordingly and close the file.

---

[8]Although not directly raised by Plaintiff, the Court notes that the ALJ's decision was made without the use of a Vocational Expert. While this would ordinarily give the Court pause, the decision here was made at step four of the sequential evaluation. Vocational expert testimony is not necessary when, as here, the ALJ concludes a claimant can perform his past relevant work. *See Lucas v. Sullivan*, 918 F.2d 1567, 1573 n. 2 (11th Cir .1990).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 2, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy